# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EDDIE RENCHER, JR.,

    Petitioner,

vs.

BRIAN WILLIAMS, SR.,

    Respondents.

Case No. 2:12-cv-01258-APG-GWF

**ORDER**

Before the court are the amended petition for writ of habeas corpus (ECF No. 18), respondents' answer (ECF No. 59), and petitioner's reply (ECF No. 62). The court finds that relief is not warranted and denies the amended petition.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

Many of the people involved in this case were minors, and they are identified only by their initials.  Petitioner was convicted of multiple counts of sexual assault with a minor under fourteen years of age and multiple counts of lewdness with a child under the age of fourteen.  The victim was D.H., a girl.  D.H. knew C.C. and B.C., brother and sister, respectively.  C.C. and B.C. had a half-brother named Cortez Bowen.  C.C. testified at trial about uncharged sexual abuse by petitioner.  B.C. had accused Cortez Bowen of sexually abusing her.  One possible defense theory was that D.H. had made up her story based upon what Cortez Bowen had done to B.C.

The court has dismissed ground 1 because it was procedurally defaulted. ECF No. 56.  Reasonable jurists would not find the court's determination to be debatable or wrong, and the court will not issue a certificate of appealability for ground 1.

Ground 2 contains three claims of prosecutorial misconduct because the prosecution argued facts not in evidence, vouched for the credibility of witnesses, and shifted the burden of proof.

> [I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' . . .  The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' . . . Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."

Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting, inter alia, Donnelly v. DeChristoforo, 416 U.S. 637, 642, 643 (1974)).  The Supreme Court has not specifically held that the prosecutor may not vouch, may not assume facts not in evidence, may not shift the burden of proof.  The standards of Darden and Donnelly are broad, allowing wide latitude in state-court decisions.

In ground 2(A), petitioner argues that in the closing argument the prosecutor assumed facts not in evidence.  The Nevada Supreme Court held:

> Fourth, Rencher argues that the prosecutor improperly gave his opinion in an attempt to inflame the jury when he stated that Rencher was "raping" the victim.  We conclude that the prosecutor's comments did not state the prosecutor's opinion.  The prosecutor merely argued that the evidence showed that Rencher repeatedly sexually assaulted the victim.  See Collins v. State, 87 Nev. 436, 439, 488 P.2d 544, 545 (1971) (noting that a prosecutor may make statements phrased as his opinion when those are conclusions from the evidence introduced at trial).  Therefore, the prosecutor's argument did not constitute plain error.
>
> Fifth, Rencher argues that the prosecutor improperly gave his opinion in an attempt to inflame the jury when he argued that the victim did not have any physical signs of abuse because Rencher avoided significant injuries to conceal and effectuate his repeated abuse of the victim.  We conclude that the prosecutor's comments did not impermissibly give his opinion in an attempt to inflame the jury.  The statement was a proper comment on the evidence and response to the defense argument highlighting the lack of findings during the victim's physical exam.  Therefore, the prosecutor's comment did not constitute plain error.

Ex. 74, at 8-9 (ECF No. 23-13, at 9-10).  Defense counsel had argued to the jury that D.H., the victim, should not be believed because she showed no injuries and an intact hymen, and that Nurse Flynn, who testified about the examination of D.H., should not be believed because she had testified that a hymen can heal.  Ex. 59, at 89, 95 (ECF No. 22-13, at 91, 97).  In rebuttal, the prosecutor noted that petitioner could have not penetrated D.H. fully to keep her from bleeding so that he could rape her repeatedly.  Ex. 59, at 100-01 (ECF No. 22-13, at 103).  The relationship between petitioner and D.H.'s mother was on-and-off, and the prosecutor noted that D.H. might have been scared that they would resume the relationship and that petitioner would start raping D.H. again.  Ex. 59, at 104 (ECF No. 22-13).  The Nevada Supreme Court reasonably could have concluded that

the prosecutor's comments were a response to the defense argument and were inferences from the evidence presented, and did not make the trial fundamentally unfair to petitioner.[1]

In ground 2(B), petitioner argues that the prosecutor vouched for D.H. and C.C., who had testified about uncharged sexual abuse by petitioner. The Nevada Supreme Court held:

> Second, Rencher argues that the prosecutor improperly vouched for the victim's testimony with these comments:
>
>> That's where the credibility comes into issue. Doesn't that make sense to you, that she's relaying what happened to her, that's a pretty accurate recollection?. . . .
>>
>> You didn't hear her—that her story changed at all. . . .
>>
>> So to say that [D.H.] made this up for that reason doesn't make sense. . . .
>>
>> And it has nothing to do with the fact that she would have made all of this up.
>
> "It is improper for a prosecutor to vouch for the credibility of a government witness." United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980). Also, "prosecutors must not inject their personal beliefs and opinions into their arguments to the jury." Aesoph v. State, 102 Nev. 322, 721 P.2d 379, 383 (1986).
>
> We conclude that the prosecutor's comments were permissible argument on the victim's credibility and did not amount to improper vouching. The prosecutor's comments did not inject his personal beliefs but argued that the specificity and consistency of the victim's recollection militated a conclusion that she was telling the truth. Further, this court in Klein v. State, 105 Nev. 880, 784 P.2d 970 (1989), found that argument about a witness' motivation was permissible if it did not divert the jury's attention away from focusing on the facts in evidence which reflected on the credibility of the witnesses. See id. at 883-84, 784 P.2d at 972. In the instant case, the prosecutor merely argued that the defense's argument concerning the victim's motivation to lie did not make sense. We also note that the jury was properly instructed only to consider as evidence the testimony of witnesses, exhibits, and facts admitted or agreed to by counsel; and, the jury was instructed that the statements, arguments, and opinions of counsel were not to be considered as evidence. Therefore, the prosecutor's argument did not constitute plain error.

Ex. 74, at 6-7 (ECF No. 23-13, at 7-8).

> Seventh, Rencher argues that the prosecutor improperly gave his opinion in an attempt to inflame the jury when he argued that the fact that C.C. told a previous lie did not mean that he lied in his trial testimony. We conclude that the comment did not amount to prosecutorial misconduct because it was a proper comment on the evidence concerning the credibility of a State witness. Therefore, Rencher failed to demonstrate plain error.

---

[1]On direct appeal, petitioner took exception to the prosecutor's use of the word "raping" to describe petitioner's actions, as inflammatory. Ex. 70, at 15 (ECF No. 23-9, at 24). In ground 2(A), petitioner quotes the prosecutor using the word "raping," but petitioner does not present a distinct claim that the use of the word itself was inflammatory.

Ex. 74, at 9 (ECF No. 23-13, at 10). Defense counsel argued why the jury should not believe D.H. and C.C. In rebuttal, the prosecutor explained why the jury should believe D.H. and C.C. The prosecutor based her argument upon the evidence at trial, not upon any guarantee by her personally or the District Attorney's office that D.H. and C.C. were telling the truth. Ex. 59, at 104-07 (ECF No. 22-13, at 106-09). The Nevada Supreme Court reasonably could have concluded that the prosecutor's comments did not make the trial fundamentally unfair to petitioner.

In ground 2(C), petitioner argues that the prosecutor shifted the burden of proof. Ex. 59, at 99, 102. The Nevada Supreme Court held:

> Eighth, Rencher argues that the prosecutor improperly shifted the burden of proof when he stated that the jury "did not hear about any other person that could have committed these crimes," as well as claimed that the victim's testimony was not impeached during trial or otherwise shown to be inconsistent. We conclude that the comments did not amount to prosecutorial misconduct or shift the burden of proof. The prosecutor's comment regarding other suspects did not shift the burden of proof but instead was a response to the defense's argument that other adults had the opportunity to molest the victim. And the prosecutor's statement about the lack of impeachment of the victim's testimony was proper argument concerning her credibility. Therefore, the prosecutor's comments did not constitute plain error.

Ex. 74, at 9-10 (ECF No. 23-13, at 10-11). The court needs to examine the prosecutor's comments in context. Defense counsel had argued that many other people, particularly D.H.'s father, could have abused D.H. Ex. 59, at 91-92 (ECF No. 22-13, at 93-94). In rebuttal, the prosecutor said:

> Now, in terms of just trying to come up with some other person, specifically Ms. Simms said, you know, who was with her children, someone else could have committed this. You know, you've got to base your decision based upon the evidence in this case. You did not hear about any other person that could have committed these crimes. You did not hear that Carl Roddy [the father of D.H.] was there and could have committed these crimes. You can't just start speculating because Ms. Simms asks you to about, well, maybe somebody else did it. That is not reasonable in this case. It is not reasonable doubt.

Ex. 59, at 99 (ECF No. 22-13, at 101). The defense objected as misstating the evidence, the prosecution responded that it was argument, and the court reminded the jury that their memory of the evidence controls, that arguments of counsel are not evidence. Id. Under the circumstances, the Nevada Supreme Court reasonably could have concluded that the prosecutor's comments did not make the trial fundamentally unfair.

Reasonable jurists would not find the court's conclusions on ground 2 to be debatable or wrong, and the court will not issue a certificate of appealability for ground 2.

Ground 3 is a claim of trial-court error in denying petitioner's motion to dismiss based upon a violation of Brady v. Maryland, 373 U.S. 83 (1963). On this issue, the Nevada Supreme Court held:

> Rencher argues that the district court abused its discretion when it denied his motion to dismiss the charges in which he asserted that the State failed to provide exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963). He asserted in the motion below that the State failed to provide evidence of an investigation into acts that Cortez Bowen committed against another child victim that were similar to those asserted in the instant case.
>
> "Brady and its progeny require a prosecutor to disclose evidence favorable to the defense when that evidence is material either to guilt or to punishment." . . . A claim that the State committed a Brady violation must show that: (1) "the evidence at issue is favorable to the accused;" (2) the State failed to disclose the evidence, either intentionally or inadvertently; and (3) "prejudice ensued, i.e., the evidence was material." . . . The United States Court of Appeals for the Ninth Circuit has stated that "our precedents make clear that dismissal of an indictment is an appropriate sanction for a constitutional violation only where less drastic alternatives are not available." . . . .
>
> We conclude that the district court did not abuse its discretion in denying Rencher's motion to dismiss. Prior to trial, Rencher had requested discovery of police reports related to an alleged incident of abuse by Cortez Bowen against B.C., who lived in the same apartment complex as D.H. Rencher asserted that the description of the abuse in that report was similar to the reports by D.H. Thus, the evidence was arguably favorable to the defense as it pointed to another possible perpetrator or tended to show that the victim might have fabricated the report of abuse. However, on appeal, Rencher concedes that the requested reports were eventually turned over to the defense over one month prior to trial. While he contends that he was prejudiced by the late disclosure of the evidence, Rencher did not demonstrate that the dismissal of the prosecution was an appropriate sanction for the late disclosure of Brady material where less drastic measures were available.

Ex. 74, at 3-4 (ECF No. 23-13, at 4-5) (citations omitted).

The Supreme Court of the United States has not clearly established when the prosecution must disclose material, exculpatory and impeachment evidence to the defense. In federal criminal proceedings, the court of appeals has established this rule:

> Brady does not necessarily require that the prosecution turn over exculpatory material before trial. To escape the Brady sanction, disclosure "must be made at a time when disclosure would be of value to the accused."

United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988).

Trial counsel did receive the report approximately one to two months before trial. Counsel's defense hypothesis was that D.H. repeated the details that B.C. gave of Cortez Bowen's abuse of B.C., which could show that petitioner did not abuse D.H. At the evidentiary hearing, trial counsel

-6-

testified that she reviewed B.C.'s statement. The acts that B.C. described were not similar to the acts that D.H. described. Ex. 89, at 26-27, 70-72, 76, 82-84 (ECF No. 24-3, at 27-28, 71-73, 77, 83-85). Counsel decided not to present a defense that D.H. made up her allegations based upon what had happened to B.C. In other words, counsel had enough time to determine that the report was of no value to the defense. Under these circumstances, the Nevada Supreme Court reasonably could have concluded that Brady was not violated.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 3.

Ground 4 contains four remaining claims of ineffective assistance of counsel; the court already has dismissed ground 4(B) because it was procedurally defaulted.[2] ECF No. 56. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

---

[2] On ground 4(B), reasonable jurists would not find this court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 105 (2011) (citations omitted).

Ground 4(A) is a claim that counsel failed to retain a medical expert and failed to properly cross-examine the prosecution's medical expert.  On this issue, the Nevada Supreme Court held:

> Fifth, appellant claimed that trial counsel was ineffective for failing to retain or call a medical expert to refute testimony by a nurse that a hymen can regrow.  Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced.  Appellant gave notice to the State that an expert would testify at the evidentiary hearing that hymen cannot regrow; however, this expert was not called at the hearing.  Therefore, appellant failed to demonstrate by a preponderance of the evidence that the evidence provided at trial was false or that there was an expert who would have testified to refute the testimony of the nurse.  Therefore, the district court did not err in denying this claim.

Ex. 98, at 3-4 (ECF No. 24-12, at 4-5).  Nurse Flynn testified that D.H.'s genitals and anus were normal, and such injuries would heal very quickly.  Ex. 58, at 144-46 (ECF No. 22-12, at 146-48).  She also testified that an abrasion to the hymen can heal.  Ex. 58, at 146-47 (ECF No. 22-12, at 148-49).  She also testified that often a child will say that something was in the vagina, when it actually was just penetration of the labia.  Ex. 58, at 148 (ECF No. 22-12, at 150).  Petitioner had the opportunity in state court to provide evidence showing that (1) Nurse Flynn's testimony was incorrect, (2) that reasonably diligent counsel could have countered Nurse Flynn's testimony by retaining a defense expert, and (3) that petitioner's counsel performed deficiently by not retaining

such an expert. Petitioner did not use that opportunity, and thus the Nevada Supreme Court's determination was a reasonable application of Strickland.

In ground 4(C), petitioner claims that counsel failed to object to improper comments of the prosecutor, referring to ground 2. On this issue, the Nevada Supreme Court held:

> First, appellant claimed that trial counsel was ineffective for failing to object to statements by the State that constituted prosecutorial misconduct. The underlying claim was raised and rejected on direct appeal. . . . Because this court already concluded that appellant's underlying claim lacked merit, appellant necessarily failed to demonstrate prejudice from trial counsel's failure to object to the statements by the State. Therefore, the district court did not err in denying this claim.

Ex. 98, at 2 (ECF No. 24-12, at 3). The Nevada Supreme Court is correct that earlier it had ruled upon the prosecutorial-misconduct claims on their merits. Its determination that petitioner suffered no prejudice from the lack of an objection is a reasonable application of Strickland.

In ground 4(D), petitioner claims that counsel failed to examine the victim's prior knowledge of sexual terms and acts. On this issue, the Nevada Supreme Court held:

> Second, appellant claimed that trial counsel was ineffective for failing to investigate the fact that the victim may have had knowledge of sexual terms and actions because her friend was the victim of sexual assault by another man. Further, he claimed that trial counsel was ineffective for failing to investigate the man who assaulted the victim's friend. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. Trial counsel testified at the evidentiary hearing that she tried repeatedly to get information regarding the victim's friend but was unable to do so until shortly before trial. Further, trial counsel testified at the evidentiary hearing that the victim and her friend gave different descriptions of the sexual actions committed against them, which would have demonstrated that they both had their own experiences and with different perpetrators. Trial counsel made a tactical decision not to present this evidence to the jury. Therefore, the district court did not err in denying this claim.

Ex. 98, at 2-3 (ECF No. 24-12, at 3-4). This claim is related to the Brady claim of ground 3. Counsel testified at the evidentiary hearing that when she compared the report of Cortez Bowen's abuse of B.C. with the report of petitioner's abuse of D.H., she found that the acts described were not similar. Ex. 89, at 26-27, 70-72, 76, 82-84 (ECF No. 24-3, at 27-28, 71-73, 77, 83-85). The Nevada Supreme Court reasonably concluded that counsel did not provide ineffective assistance.

Petitioner argues that counsel still should have inquired whether D.H. obtained information on sexual acts by talking with B.C. That is, if D.H. did obtain this information from B.C., then perhaps D.H. made up her own story with what she had learned from B.C. However, at a hearing to

determine whether to admit evidence of petitioner's prior uncharged conduct, B.C. testified that she never discussed with D.H. what Cortez Bowen had done to B.C.  Conversely, D.H. never discussed with B.C. what petitioner had done to D.H. Ex. 45, at 70-71 (ECF No. 21-14, at 71-72). In the state post-conviction proceedings, petitioner did not present any evidence indicating that counsel would have achieved a different result if counsel had asked the same questions at trial.[3] The Nevada Supreme Court reasonably applied <u>Strickland</u> in its determination.

In ground 4(E), petitioner claims that counsel did adequately cross-examine adequately C.C., who testified about prior uncharged sexual abuse by petitioner. On this issue, the Nevada Supreme Court held:

> Sixth, appellant claimed that trial counsel was ineffective for failing to confront a witness with his prior statements denying being assaulted by appellant in the past. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. Trial counsel testified at the evidentiary hearing that she did not impeach the witness with his prior statement because the statement was that he did not disclose being assaulted rather than he denied being assaulted. Trial counsel made a tactical decision not to present this evidence to the jury. Further, appellant failed to demonstrate that there was a reasonable probability of a different outcome at trial because trial counsel did impeach this witness with several of his other statements, including statements that he would lie and that he wanted to please other people. Therefore, the district court did not err in denying this claim.

Ex. 98, at 4 (ECF No. 24-12, at 5). C.C. testified that petitioner molested him. Ex. 58, at 188-201 (ECF No. 22-12, at 190-203). He told a detective about a year and a half later. Ex. 58, at 201-02 (ECF No. 22-12, at 203-04). Counsel cross-examined C.C. about lying and tried to impeach him with prior testimony. Ex. 58, at 207-09 (ECF No. 22-12, at 209-11). At the evidentiary hearing, counsel testified that the report by Faiza Ebrahim stated that C.C. made no disclosures. Ex. 89, at 38-41 (ECF No. 24-3, at 39-42). The report by Ebrahim of October 2, 2006 states, "[C.C.] made no disclosures of sexual abuse or abuse of any kind." Ex. 102, internal Ex. K (ECF No. 24-16, at 12). However, "He remembered when Eddie Rencher was at their home, and stated that they had a good time. He said that Eddie had brought over his two children as well, [D. and Z.], both of whom he says he like [sic] to play with. He denied anything ever happening in the home to make him uncomfortable or anything he thought might have made someone else feel uncomfortable." <u>Id.</u> In a

---

[3] At the pre-trial hearing, the prosecutor, not defense counsel, asked those questions.

-10-

report dated October 11, 2006, Mark Fitzgerald, a family services specialist supervisor wrote, "[Rita Baker] left her foster children with her son who is a sex offender. As she knew this we are substantiating case. Children interviewed, no disclosure. Close as substantiated." Id. (ECF No. 24-16, at 10-11).[4] In a report dated December 19, 2006, Darryl Glover, a senior family services specialist, wrote:

> The three male siblings were placed with a family member Rita Rencher-Baker [petitioner's mother] who became a licensed foster parent. During the week of July 14, 2006, Rita allowed her son <u>Eddie Rencher who is a level 2 sex offender</u> care for the three siblings while she was out of town for a week. Eddie was arrested on July 14, 2006 on new charges of sexual assault with a victim under 14 and lewdness with a minor under 14.
>
> Cortez Bowen is already a registered juvenile sex offender. Cortez, Marcus and <u>[C.] deny any sexual assault by their uncle</u>.

Id. (ECF No. 24-16, at 10) (emphasis added). On the one hand, this report does contain an outright denial, but it also is only a summary of other reports without any first-hand information. Counsel might have confronted C.C. with this report, as well as Ebrahim's report that C.C. said that he had fun with petitioner. On the other hand, Glover's report also notes that petitioner is a level-two sex offender, and counsel's primary strategy was to keep petitioner's history as a sex offender away from the jury.

Although counsel did not confront C.C. directly with Ebrahim's report, she cross-examined him about lying and impeached him with prior inconsistent statements that he had given in a pre-trial hearing. On further redirect examination, he gave the answer that undoubtedly he would have given if counsel asked him why he did not tell Ebrahim about the sexual abuse:

> So yeah, like 'cause she [Debbie Kelly, his foster mother] was asking me like did anything happen between me and Eddie, I thought that she may have already knew [by this time, petitioner had been arrested for the sexual abuse of D.H.], and I thought that was the time for me to tell somebody, so I told her.

Ex. 58, at 220 (ECF No. 22-12, at 222). Given the questions that counsel did ask, and the ambiguity in the statement in the report, the Nevada Supreme Court reasonably could have concluded that counsel did not perform deficiently by not asking C.C. about the report.

---

[4]The reports are in reverse chronological order.

-11-

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 4.

IT IS THEREFORE ORDERED that the amended petition for writ of habeas corpus (ECF No. 18) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this action.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

Dated: March 31, 2017.

_____
ANDREW P. GORDON
United States District Judge